# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JOHN D. ANDERSON, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 09 C 2525 |
| JOHN E. POTTER, Postmaster General of the United States Postal Service, Great Lakes Area Operations, | ) ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

John D. Anderson has sued his employer, the United States Postal Service (USPS). He asserts claims under the Rehabilitation Act and the Americans with Disabilities Act (ADA) for disability discrimination, failure to accommodate, and retaliation and under the Family and Medical Leave Act (FMLA) for interference and retaliation. USPS has moved for summary judgment. For the reasons stated below, the Court grants USPS's motion.

## Background

In May 1998, USPS hired Anderson as a part-time mail processing clerk. Anderson had been diagnosed with asthma in 1997. From the time he was hired through the commencement of this suit in 2009, Anderson worked at the USPS facility in Bedford Park, Illinois.

In April 2002, Anderson filed an informal equal employment opportunity (EEO)

complaint, alleging that his request for time off under the FMLA was denied in retaliation for participating in a previous discrimination complaint and that he had been discriminated against because of a disability and his gender. In July 2002, Anderson filed another informal EEO complaint in which he alleged that his supervisor retaliated against him for talking to another manager and harassed him and that he had been discriminated against because of a disability.

Anderson states that his asthma symptoms were only noticeable at work. He attributes this to his workplace being damp and full of mold and mildew. In September 2002, Anderson complained to the Occupational Health and Safety Administration (OSHA) about the amount of mold and mildew at his workplace. OSHA notified USPS of the problem and directed USPS to investigate. OSHA did not tell USPS that Anderson had made the complaint. USPS hired a contractor who inspected and tested the facility. USPS then approved a $32,000 renovation to remove the mold and prevent it from coming back.

Anderson left work early on December 3, 2002, claiming that the mold removal process exacerbated his asthma. On December 6, he filed a claim for an occupational illness. On December 23, Dr. Michael B. Foggs, Anderson's allergist, wrote a letter in which he stated that Anderson's asthma was sensitive to mold and that he should not work in any environment where he was exposed to mold, dampness, or noxious and toxic chemicals. The USPS injury compensation department, not the facility where Anderson worked, received the letter. The same day, Dr. Foggs wrote in a separate document that Anderson could return to work when cleanup and renovations were completed. In February 2003, Dr. Foggs wrote again that Anderson was suffering from

asthma flare-ups at work and that he was not exposed to any irritants at home or anywhere else he went. USPS granted Anderson's occupational injury claim.

On January 6, 2003, USPS informed Dr. Foggs that it had finished cleaning Anderson's facility of mold and mildew. Dr. Foggs agreed that Anderson could return to work "[i]f the work environment is clean and devoid of mold spores and irritants." Def. Ex. 16. On January 17, however, Dr. Foggs wrote another letter in which he stated that Anderson was still suffering asthma-related problems at work and that merely cleaning the area might not be sufficient. Dr. Foggs also wrote that Anderson was "virtually symptom-free at home and in the Security Office at the workplace," and he requested that Anderson be assigned to work in the security office or a comparable work space. Def. Ex. 19. The same day, Anderson contacted an EEO counselor to complain of disability discrimination. On January 30, he filed an informal complaint stating that he was suffering disability discrimination, had not been accorded his FMLA rights, and had received a notice of removal stating that he would be terminated for absenteeism. USPS and Anderson settled the complaint in March, and Anderson was not terminated.

Anderson filed another informal EEO complaint in April 2003 and followed that with a formal complaint in June 2003. In both complaints, he sought to enforce his FMLA rights. In the informal complaint, he also made claims of disability discrimination and retaliation. Throughout 2002 and 2003, Anderson missed a good deal of work, though the parties dispute how much of that time he missed due to his asthma. In 2003, in addition to the notice of removal discussed above, Anderson received three notices of suspension related to absenteeism.

In December 2003, Dr. Foggs wrote another letter asking that Anderson be

3

removed from any work environment containing "mold spores, dampness, and/or noxious and toxic irritants." Def. Ex. 28. Anderson states that he left work and went to the hospital in December 2003 and January 2004 because he was suffering from asthma attacks. USPS agrees that Anderson went to the hospital in January 2004 but disputes the December visit because the hospital did not produce any records of it in response to a subpoena.

On July 6, 2004, Anderson received another notice of removal. It stated that he would be terminated because he had not reported to work since June 19. On July 21, USPS received a note and a letter from Dr. Foggs stating that Anderson had not been able to work since June 18 and that he had suffered from several life-threatening asthma attacks at work. The day before USPS received Dr. Foggs's letter, Anderson made an informal EEO complaint alleging race and disability discrimination and retaliation. USPS rescinded and expunged the notice of removal on July 23. Anderson made a formal EEO complaint on September 27, 2004 in which he alleged disability, sex, and race discrimination and retaliation.

In May 2005, Anderson wrote a letter requesting accommodations from USPS. He asked to be placed in "the security office [or] any other place well tolerated by me." Def. Ex. 34. On the same day, Dr. Foggs wrote another letter to USPS reiterating the problems that Anderson had had and stating that his life could be at risk if he returned to work. Anderson wrote another letter to senior manager Michael Lee in August 2005, requesting that he be granted an accommodation and assigned to clerical or office work. Later in August, Dr. Elaine Ferguson, a medical officer for USPS, wrote to Dr. Foggs requesting additional details because Anderson had never had an asthma attack

4

at work and requesting that Dr. Foggs describe why Anderson's asthma was life-threatening. She also stated that the mold problem had been solved and that air quality in the building was better than that outside. Dr. Foggs responded that his records indicated that Anderson had had several asthma attacks at work and that he doubted that the air quality was actually sufficiently good in the facility. He did not provide any records.

In September 2005, Anderson received another notice of removal. It stated that he had not returned to work since June 2004 and that USPS found his medical documentation inadequate. Anderson filed a union grievance, which the parties settled by agreeing that Anderson would undergo an examination by a new doctor. Dr. Jacek Pieta examined Anderson and found that he could work in an irritant-free environment. Dr. Ferguson discussed Anderson's condition with Dr. Pieta and concluded that Anderson could work if the air quality was good in his facility. Anderson returned to work in February 2006. He was placed in the manual letters department because he told supervisors that his asthma symptoms were better there. Lee testified that he observed Anderson wearing his mask and working without problems, but Anderson disputes this.

Anderson did not receive any further information regarding his request for an accommodation. Lee testified that he checked to see whether Anderson could be assigned to an office job and that there were no vacant office jobs at the time, though Anderson disputes this. Lee and another manager discussed the request during a phone call with Stephen Grieser, the head of USPS's Reasonable Accommodation Committee. Grieser testified that during the call, he consulted Dr. Ferguson, who was

5

also a member of the committee. Pl. Ex. C. at 95. The parties dispute whether the call occurred in August 2005 or in March 2006 after Anderson had returned to work. During the call, Grieser and the managers decided to provided an "N95"mask to Anderson, because they thought it could filter out anything. During a followup call two or three weeks after the initial call, Lee told Grieser that Anderson was showing up for work in the manual letters department, was wearing the N95 mask, and was not having any problems. Grieser did not convene the full committee to consider Anderson's accommodation request.

From 2006 until the commencement of this lawsuit on April 27, 2009, Anderson was absent from work many days, though the parties dispute how many of the absences were precipitated by his asthma. He received several notices of suspension and notices of removal. Anderson also claims that his pay was docked, but USPS contends that he was paid for every day that he actually worked. Anderson was promoted to a full time employee in August 2007. He still works for USPS as a mail processing clerk.

## Discussion

On a motion for summary judgment, the Court "view[s] the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Trinity Homes LLC v. Ohio Cas. Ins. Co.*, 629 F.3d 653, 656 (7th Cir. 2010). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In other words, a court may grant summary judgment "where the record taken as a whole could not lead a rational trier of fact to find for the

6

non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Anderson has made five claims against USPS: (1) retaliation for filing previous EEO and OSHA complaints; (2) disability discrimination under the Rehabilitation Act; (3) failure to make reasonable accommodations for his disability; (4) interference with his exercise of his FMLA rights; and (5) retaliation for his attempted exercise of his FMLA rights.

**1.  Retaliation claim**

"A plaintiff has two means of proving . . . retaliation: the direct method and the indirect method." *Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir. 2003) (internal quotation marks omitted). Anderson contends only that he can prove retaliation via the direct method. "Under the direct approach, a plaintiff must present evidence of: (1) a statutorily protected activity; (2) an adverse action; and (3) a causal connection between the two." *Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 758 (7th Cir. 2006). Under the direct method, a plaintiff can present both direct and circumstantial evidence of causation. *Rogers*, 320 F.3d at 753.

Anderson contends that USPS management denied him reasonable accommodations in retaliation for his EEO complaints, union grievance, and complaint to OSHA. USPS argues that Anderson has not shown a causal link between any adverse action and Anderson's protected activities.

Even making reasonable inferences in Anderson's favor, there is no evidence from which a reasonable jury could conclude that USPS failed to accommodate his asthma in retaliation for his complaints and grievances. First, it is undisputed that

USPS did act to accommodate Anderson's breathing problems in late 2002 by beginning expensive cleanup and repair of the facility in response to his OSHA complaint. This occurred after Anderson had already filed two of his EEO complaints. Later, management and Grieser decided to have Anderson work in manual letters and use a mask as an accommodation for his disability. At his deposition, Lee testified that he observed Anderson working in manual letters and wearing a mask and that he did not appear to have any difficulty doing his job. Pl. Ex. B at 60–61. Even were the jury to believe Anderson's statement that he never received an N95 mask (and thus Lee could not have observed him wearing it), there is still no evidence that would enable a reasonable jury to find that Lee and other management failed to accommodate Anderson's asthma out of a desire to retaliate.

The only evidence that Anderson provides is that he engaged in protected activity and subsequently did not receive the accommodation that he wished from USPS. But the fact that the alleged failure to accommodate occurred after Anderson's protected activities does not mean that a desire to retaliate motivated USPS management. Indeed, Anderson cannot even show that the timing of the alleged failure to accommodate was suspicious. Interpreting the evidence in Anderson's favor, a jury could find that Anderson's request for reasonable accommodation was denied when Lee and another manager talked to Grieser in August 2005. At that point, Anderson had not made an EEO complaint since July 2004. A time span of more than a year is too long to give rise to a genuine issue of fact regarding causation. *See Amrhein v. Health Care Serv. Corp.*, 546 F.3d 852 (7th Cir. 2008) (three month period insufficient to create a genuine issue of fact).

8

## 2. Disability discrimination

Anderson contends that USPS discriminated against him because of disability, in violation of the Rehabilitation Act. USPS argues that Anderson forfeited this claim and all of his other claims except the retaliation claim discussed above by failing to include them in his second amended complaint and waiting until his response to assert them. A district court can regard claims raised in a response to a summary judgment motion as "too late" when a defendant has been denied fair notice of the claims. *See EEOC v. Lee's Log Cabin, Inc.*, 546 F.3d 438, 443 (7th Cir. 2008) (internal quotation marks omitted). Anderson's initial *pro se* complaint made disability discrimination and reasonable accommodation claims, so USPS reasonably would have thought that he had dropped those claims when his second amended complaint advanced only a retaliation claim. USPS claims that it was prejudiced because, in reliance on the omission of those claims, it did not conduct discovery into whether Anderson's major life activities were affected by asthma. The Court finds that Anderson waited too long to reassert these claims and that USPS would be unfairly prejudiced were the Court to permit him to advance them now.

Even if this were not the case, Anderson's disability discrimination claim also fails on the merits. A claim under the Rehabilitation Act has four elements: (1) the plaintiff was disabled as defined in the act; (2) he was otherwise qualified for his job; (3) he was involved in program receiving federal financial assistance; and (4) "he was excluded from participation, denied benefits, or otherwise discriminated against solely because of his disability." *Branham v. Snow*, 392 F.3d 896, 902 (7th Cir. 2004). In the employment context, the provisions of the ADA determine whether the Rehabilitation Act has been

violated. *Id.*

To be disabled under the Rehabilitation Act, a person must "(i) [have] a mental or physical impairment which substantially limits one or more of such person's major life activities; (ii) [have] a record of such an impairment; or (iii) [be] regarded as having such an impairment." *Id.* at 902. Anderson argues that his major life activity of breathing was substantially limited by his asthma. But the evidence would not allow a reasonable jury to find that the impairment was substantial. Both Anderson and Dr. Foggs repeatedly stated that Anderson's asthma was well-controlled with medication except at his workplace. Dr. Foggs wrote to USPS that Anderson's asthma improved whenever he was not in the workplace. Def. Ex. 22 at 1; Def. Ex. 33 at 1. Anderson stated in an affidavit that he was "symptom-free" when he was anywhere in the USPS facility besides the large room where mail was sorted. Pl. Ex. G ¶ 23. Indeed, Anderson is convinced that a move to the security office would solve his asthma troubles even though he has never been in that office continuously for more than ten minutes and does not know if it had a separate air supply. Def. Ex. 3 at 62–63. Anderson's asthma problems appear to be limited to the letter-sorting room. The only off-site impairment that Anderson described is that he does not run very much any more and sometimes did not engage in activities he previously had. *Id.* at 41.

The Seventh Circuit has held that the major life activity of working cannot be considered to be substantially limited within the meaning of the ADA by an employee's trouble at one job. *Duncan v. Wisconsin Dep't of Health and Family Servs.*, 166 F.3d 930, 935 (7th Cir. 1999). The court has also stated that "[p]ersons are not disabled who are unable to perform only a narrow range of jobs." *Waggoner v. Olin Corp.*, 169 F.3d

481, 484 (7th Cir. 1999). Moreover, the Second Circuit has held that without evidence of breathing problems away from work, there cannot be a substantial limitation to the life activity of breathing. *Muller v. Costello*, 187 F.3d 298, 314 (2d Cir. 1999), *abrogated on other grounds by Garcia v. State Univ. of N.Y. Health Scis. Ctr.*, 280 F.3d 98, 113 n.3 (2d Cir. 2001). Anderson's case is similar. He has no asthma symptoms when he is not in his work area, even when he is in the same facility. Pl. Ex. G. ¶¶ 8, 23. Without evidence that his breathing was impaired outside of the room he was assigned to work in, no reasonable jury could find that he was disabled.

### 3. Failure to make reasonable accommodation

Anderson also argues that USPS violated the Rehabilitation Act and the ADA by failing to provide him with reasonable accommodation for his asthma. As discussed above, Anderson forfeited this claim by not raising it until his response brief. The claim also fails on the merits because, as discussed above, no reasonable jury could find Anderson disabled within the meaning of the statutes. *Mays v. Principi*, 301 F.3d 866, 868–70 (7th Cir. 2001) (plaintiff must be disabled to bring a reasonable accommodation claim).

In addition, USPS was not required to provide Anderson with exactly what he requested, but only a reasonable accommodation. *Rehling v. City of Chicago*, 207 F.3d 1009, 1014 (7th Cir. 2000); *Schmidt v. Methodist Hosp.*, 89 F.3d 342, 344 (7th Cir. 1996). Even were a jury to disbelieve Lee's testimony that Anderson was working with a mask on, it is undisputed that USPS attempted to accommodate Anderson by cleaning and renovating the facility and later transferring him to the manual letters area, where his asthma was not as bad. Anderson wanted to be moved to a desk job, but

11

"the ADA does not require permanent assignment to a temporary light-duty job." *DeVito v. Chicago Park Dist.*, 270 F.3d 532, 534 (7th Cir. 2001). Further, Lee testified that no office jobs were vacant and funded. Although Anderson contested this statement in USPS's statement of facts, none of the evidence he cited actually contradicts Lee's statement. Pl. Resp. to Def. Stat. of Undisputed Facts ¶ 54.

### 4. FMLA interference

Anderson contends that USPS interfered with his rights under the FMLA. Like the previous two claims, this claim is forfeited because Anderson did not assert it until his response brief. The claim also fails on the merits.

An FMLA claim has five elements: "(1) [the plaintiff] was eligible for the FMLA's protections, (2) his employer was covered by the FMLA, (3) he was entitled to leave under the FMLA, (4) he provided sufficient notice of his intent to take leave, and (5) his employer denied him FMLA benefits to which he was entitled." *Burnett v. LFW Inc.*, 472 F.3d 471, 477 (7th Cir. 2006). To be eligible, an employee must have worked for his employer for at least twelve months prior to exercising FMLA rights and must have worked at least 1,250 hours in those months. 29 U.S.C. § 2611(2)(A); *Pirant v. U.S. Postal Serv.*, 542 F.3d 202, 206 (7th Cir. 2008). Anderson has not provided any evidence or even alleged that at the times when he requested leave under the FMLA, he had worked 1,250 in the previous twelve months. Without this evidence, no reasonable jury could find that Anderson was eligible under the FMLA.

### 5. FMLA retaliation

Anderson also makes a FMLA retaliation claim. As discussed earlier, he has forfeited this claim by failing to raise it until his response to the summary judgment

12

motion. It also fails on the merits.

"While the FMLA provides certain substantive guarantees, [it] also affords employees protection in the event they are discriminated against for exercising their rights under the Act." *Horwitz v. Bd. of Educ. of Avoca Sch. Dist. No. 37*, 260 F.3d 602, 616 (7th Cir. 2001). The elements of a FMLA retaliation claim are the same as those of the retaliation claim discussed earlier: Anderson must show that he engaged in protected activity, that USPS took an adverse employment action against him, and a causal connection between the two. *Id.*

Beyond stating the elements of the claim, Anderson does not make any argument that there is a connection between any request he made for FMLA leave and later adverse actions. This retaliation claim is even weaker than the one discussed above, because Anderson does not specify what adverse action he believes USPS took after he exercised his FMLA rights. Anderson states only that he "continually requested leave under FMLA based upon his breathing problems occurring at work, yet he was consistently denied that entitlement." Pl. Resp. Br. at 13. This statement, on its face, involves an FMLA interference claim, not a retaliation claim. Given the lack of any evidence suggesting a causal connection, no reasonable jury could find for Anderson on this claim.

## Conclusion

For the reasons stated above, the Court grants defendant's motion for summary

judgment [docket no. 43] and directs the Clerk to enter judgment in favor of defendant.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: November 21, 2011